UNITED STATES of America,
(Petitioner)

v.

Commander Lewis T. BOOKER,
Jr., JAGC, USN, Military
Judge, (Respondent)

Christopher Schaleger Electronics
Technician Second Class (E–5),
USN, (Real Party in Interest)

NMCCA 201300247

U.S. Navy–Marine Corps Court
of Criminal Appeals

20 September 2013

Military Judge: CDR Lewis T. Booker, JAGC, USN.

Convening Authority: Commander, Navy Region Northwest, Silverdale, WA.

For Petitioner: Col Stephen Newman, USMC; Mr. Brian Keller, Esq.; LT Ian D. MacLean, JAGC, USN.

For Real Party in Interest: LT Jennifer Myers, JAGC, USN.

Before M.D. MODZELEWSKI, E.C. PRICE, C.K. JOYCE, Appellate Military Judges

PUBLISHED OPINION OF THE COURT

Chief Judge MODZELEWSKI and Judge JOYCE concur.

PRICE, Judge:

## I. Introduction

Petty Officer Schaleger was charged with two specifications of sexual assault in violation of the recently amended Articles 120(b)(2) and 120(b)(3)(A), Uniform Code of Military Justice, 10 U.S.C §§ 920(b)(2) and 920(b)(3)(A) (2012).[1] On 28 May 2013, the military judge ruled that the maximum punishment authorized for each specification alleging sexual assault was the jurisdictional limitation of a summary court-martial to include confinement for one month and no punitive discharge.

In its Petition for Extraordinary Relief, the Government requests that this court issue a writ of *mandamus* setting aside the military judge's ruling and directing him to apply the correct maximum authorized punishment for each specification of sexual assault to include 30 years confinement and a dishonorable discharge.

## II. Background

Petty Officer Schaleger, the Real Party in Interest (Real Party), allegedly sexually assaulted a named victim by penetrating her vulva with his penis when he either "knew or reasonably should have known" that she was "asleep" (Specification 1), or was "incapable of consenting due to impairment by an intoxicant" (Specification 2). The sexual assault allegedly occurred on 7 December 2012 and was charged in violation of the amended Articles 120(b)(2) and 120(b)(3)(A), which apply to offenses committed on or after 28 June 2012. The Charge and two specifications were preferred on 31 January 2013, referred for trial by general court-martial on 14 May 2013, and Petty Officer Schaleger was arraigned on the alleged offenses on 22 May 2013. Trial was expected to commence on or after 16 July 2013.

The amendments to Article 120 applicable to offenses committed on or after 28 June 2012 did not specify the maximum punishments for the offenses, but authorized punishment "as a court-martial may direct." Arts. 120(b)(2) and 120(b)(3)(A), UCMJ. On 15 May 2013, the President amended Paragraph 45 of Part IV of the Manual for Courts–Martial, establishing the maximum punishment authorized for sexual assault to include a dishonorable discharge and confinement for 30 years. Executive Order 13643 of 15 May 2013. On 17 May 2013, the Government filed a Motion *in Limine* requesting that the military judge determine the maximum authorized punishment for the two alleged sexual assault specifications included "a dishonorable discharge" and either "confinement for 30 years" or "confinement for life without the possibility of parole." Appellate Exhibit II at 3.

In a written ruling of 28 May 2013, the military judge stated that "[b]ecause the 2011 amendments did not specify punishments, and because the President has only within the last two weeks set out limitations, one must look to other sources for determining available punishments." AE V at 4. In addressing these other sources, he ruled that:

---

1. The Fiscal Year 2012 National Defense Authorization Act (NDAA) amended Article 120, UCMJ, including the offense of sexual assault and is applicable to offenses committed on or after 28 June 2012. *See* NDAA for Fiscal Year 2012, Pub.L. No. 112–81, 125 Stat. 1298, 1404–07 (2011) (codified as amended at 10 U.S.C. § 920).

Upon consideration of the revision to the substantive portion of the Uniform Code of Military Justice, the parties' arguments, the Executive Order purporting to effect the 2011 amendments to the UCMJ, and case law, it is the court's determination that the maximum imposable punishment for each offense alleged, and for each lesser included offense, is the jurisdictional limitation of a summary court-martial: confinement for 1 month, restriction for 2 months, hard labor without confinement for 45 days, and forfeiture of 2/3 pay per month for 1 month. . . .

. . . .

Applying the Rule of Lenity leads to the conclusion that, while a service member may be convicted of the offenses established by the 2011 amendments, thus giving effect to the intent of the legislature to criminalize sexual offenses, the maximum punishment that can be imposed is the statutory limit imposed on a summary court-martial . . . . irrespective of forum. *Id.* at 1 and 9.

On 21 June 2013, the Government filed its Petition for Extraordinary Relief in the Nature of a Writ of *Mandamus* and Motion to Stay the Trial Proceedings. In his "Opposition," the Real Party, Petty Officer Schaleger, argued that we lack jurisdiction to act upon the Government's petition under Articles 62 and 66, UCMJ, and, in the alternative, that the Government failed to meet the high burden required to merit "extraordinary relief." Opposition to the Government's Petition for Extraordinary Relief of 12 Jul 2013 at 4. In its Reply, the Government argued that issuance of the requested relief would be in "aid of" our jurisdiction and authorized under the All Writs Act. Government's Reply of 19 Jul 2013 at 5–6.

### III. All Writs Act

"[A]ll courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) [hereinafter "All Writs Act"]; *see also United States v. Denedo,* 556 U.S. 904, 911, 129 S.Ct. 2213, 173 L.Ed.2d 1235 (2009); RULE FOR COURTS-MARTIAL 1203(b), MANUAL FOR COURTS-MAR-TIAL, UNITED STATES (2012 ed.), Discussion. " '[M]ilitary courts, like Article III tribunals, are empowered to issue extraordinary writs under the All Writs Act.' " *LRM v. Kastenberg,* 72 M.J. 364, 367 (C.A.A.F.2013) (quoting *Denedo,* 556 U.S. at 911, 129 S.Ct. 2213). The All Writs Act does not serve as "an independent grant of jurisdiction, nor does it expand a court's existing jurisdiction." *Id.* (citing *Clinton v. Goldsmith,* 526 U.S. 529, 534–35, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999)). "Rather, the All Writs Act requires two determinations: (1) whether the requested writ is 'in aid of' the court's existing jurisdiction; and (2) whether the requested writ is 'necessary or appropriate.' " *Id.* (quoting *Denedo v. United States,* 66 M.J. 114, 119 (C.A.A.F.2008)).

A writ of mandamus is "a drastic instrument which should be invoked only in truly extraordinary situations." *United States v. Labella,* 15 M.J. 228, 229 (C.M.A. 1983) *(per curiam )* (citations omitted). "The traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association,* 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943) (citations omitted). Only exceptional circumstances amounting to a "clear abuse of discretion or usurpation of judicial power," *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 383, 74 S.Ct. 145, 98 L.Ed. 106 (1953) (citation and internal quotation marks omitted), "justify the invocation of this extraordinary remedy, *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967) (citation omitted)." "To prevail on [a] writ of mandamus, [the Petitioner] must show that: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan v. Gross,* 71 M.J. 416, 418 (C.A.A.F.2012) (citing *Cheney v. United States Dist. Court for D.C.,* 542 U.S. 367, 380–81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004)).

## IV. Jurisdiction

We must first determine whether our jurisdiction extends to the review of a Government petition for extraordinary relief under the All Writs Act. As a preliminary matter, both the Government and the Real Party agree that the military judge's ruling on the maximum punishment authorized for the charged sexual assault specifications is not subject to appeal by the United States under Article 62, UCMJ (Article 62).

The Real Party contends that we have no authority to entertain the Government's petition as "Congress has limited the Government's right to an interlocutory appeal to only those instances covered by Article 62, UCMJ." Opposition at 5. He asserts that we do not have jurisdiction over this petition under Article 66, and that the issuance of a writ of *mandamus* "would usurp the limitations placed on [interlocutory] appeals in Article 62 by Congress." *Id.* at 7.

The Government responds with three separate arguments: first, that "nothing in the text of the All Writs Act" limits our authority to issue a writ when requested by the Government; second, that other service courts have rejected the Real Party's argument; and third, that Article III Federal "courts agree that the United States may petition for a writ under the All Writs Act." Reply at 2–3. We agree.

### A. Do service Courts of Criminal Appeals have the authority to entertain Government petitions for extraordinary relief?

█ For the reasons discussed below, we conclude that we have jurisdiction under the All Writs Act to entertain this petition for extraordinary relief filed by the United States for an issue not subject to appeal by the Government under Article 62.

In 1979, the Court of Military Appeals addressed essentially the same jurisdictional question presented here, at a time when the extant version of Article 62 did not permit interlocutory appeal by the Government. *See Dettinger v. United States,* 7 M.J. 216, 217 (C.M.A.1979) (citing Article 62(a), UCMJ) (Article 62 did not authorize Government appeal of a "trial judge's order dismissing a charge[.]"). The court concluded "that in an appropriate case the Government may, by application for extraordinary relief, subject a dismissal of charges by a trial judge to the scrutiny of the Court of Military Review." *Id.* at 222.

The court noted "that the Uniform Code discloses no legislative purpose to forbid the military appellate courts from considering an application for extraordinary relief from a trial judge's action only because the petitioner is the Government." *Id.* The court also noted that it was "convinced of the absence of merit in the petitioners' thesis that lacking authority to hear appeals on behalf of the Government, a Court of Military Review lacks inherent power to hear petitions for extraordinary relief on behalf of the Government." *Id.* (internal quotation marks omitted).

In 1983, Article 62 was amended to allow Government interlocutory appeal of military judge orders or rulings "which terminate[d] the proceedings with respect to a charge or specification or which exclude[d] evidence that is substantial proof of a fact material in the proceeding." *See* The Military Justice Act of 1983, Pub.L. No. 98–209 (1983). Article 62 now enumerates particular actions by a military judge that "the United States may appeal." [2] This plain, unambiguous language

---

2. § 862. Art. 62. Appeal by the United States
 (a) (1) In a trial by court-martial in which a military judge presides and in which a punitive discharge may be adjudged, the United States may appeal the following (other than an order or ruling that is, or that amounts to, a finding of not guilty with respect to the charge or specification):
 (A) An order or ruling of the military judge which terminates the proceedings with respect to a charge or specification.

 (B) An order or ruling which excludes evidence that is substantial proof of a fact material in the proceeding.
 (C) An order or ruling which directs the disclosure of classified information.
 (D) An order or ruling which imposes sanctions for nondisclosure of classified information.
 (E) A refusal of the military judge to issue a protective order sought by the United States to prevent the disclosure of classified information.

clearly conveys Congress's intent to limit the Government's right to interlocutory appeal under Article 62 itself to these enumerated bases. *See Lamie v. United States Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ("when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (citation and internal quotation marks omitted).

Article 62 is silent as to what effect, if any, this specified right to interlocutory appeal has on service court authority to hear petitions for extraordinary relief on behalf of the Government under Article 66 or otherwise. The legislative history of the various revisions to Article 62 includes no reference to extraordinary writs, and thus provides no additional insight into Congress's intent *vis-à-vis* our authority to hear petitions for extraordinary relief on behalf of the Government. Similarly, the language of the All Writs Act and its legislative history provide no insight into the answer to this question.

Nevertheless, the Court of Appeals for the Armed Forces (CAAF) has acknowledged service court authority to hear Government petitions for extraordinary relief beyond the enumerated bases of Article 62. In 1996, thirteen years after Article 62 was amended to permit interlocutory appeals by the United States, the CAAF acknowledged our authority to hear such Government petitions for extraordinary relief. *United States v. Curtin,* 44 M.J. 439, 440 (C.A.A.F.1996). In *Curtin,* the Air Force court denied, for lack of jurisdiction, a Government petition for extraordinary relief seeking an order directing a military judge to exercise jurisdiction and consider challenges to subpoenas issued to a bank records custodian. The CAAF concluded that the Air Force court "erred in upholding the military judge's ruling that he had no jurisdiction to rule on the challenges to the subpoenas[.]" *Id.* The CAAF's "conclusions and findings were predicated on," *inter alia,* its holding in *Dettinger,* "[r]elying on the All Writs Act . . . that the Government may file

a petition for extraordinary relief with the appropriate [Court of Criminal Appeals]." *Id.*

Again in 1998, the CAAF acknowledged the "well established" exercise of military court jurisdiction under the All Writs Act including "a petition for extraordinary relief filed by the Government with the Court of Criminal Appeals under the All Writs Act." *United States v. Dowty,* 48 M.J. 102, 106–07 (C.A.A.F.1998) (citing *Dettinger,* 7 M.J. at 219 and *Curtin,* 44 M.J. at 439). In a July 2013 opinion, the CAAF again cited *Curtin* in support of its "jurisdiction over the certificate submitted by the [Air Force Judge Advocate General] pursuant to Article 67(a)(2) . . . ." *Kastenberg,* 72 M.J. at 367. Despite the Real Party's contention that we lack authority to entertain the writ, he cites no post-*Dettinger* CAAF decision holding, or otherwise suggesting, that service courts lack the authority to hear Government petitions for extraordinary relief.

In addition to the cases cited above, two CAAF judges have specifically referenced service court authority to entertain Government writs. First, in *United States v. True,* Chief Judge Everett expressed disagreement with the court's exercise of jurisdiction under Article 62 when a military judge abated proceedings after the Government declined to fund court-ordered investigative assistance. 28 M.J. 1, 6 (C.M.A.1989) (Everett, C.J., dissenting). He then noted that "the Government is not left without remedy in cases such as this. Both our Court and the Court of Military Review are within the purview of the All Writs Act . . . and so, if the military judge usurped authority, the Government may seek extraordinary relief in the nature of a writ of prohibition." *Id.* (citing *Dettinger* ) (internal citations omitted). More recently, Judge Effron noted, "[t]he only means available for the Government to appeal the [military judge's sentence credit determination] would be via an extraordinary writ." *United States v. Ruppel,* 49 M.J. 247, 254 (C.A.A.F.1998) (concurring in part and in the result).

(F) A refusal by the military judge to enforce an order described in subparagraph (E) that has

previously been issued by appropriate authority."

Further, two of our sister courts have ruled on this issue. In a published 1992 opinion, the Air Force Court of Military Review ruled that it had the power "to grant the relief the government requests" (i.e. to issue a writ of prohibition against the military judge and to declare his post-trial session and rulings null and void). *United States v. Mahoney*, 36 M.J. 679, 684–85 (A.F.C.M.R.1992). The Air Force court concluded that its "authority ... to grant the government extraordinary relief from a ruling or action of a military judge is well established." *Id.* (citing *Dettinger*, 7 M.J. at 220 and the All Writs Act) (additional citations omitted).[3]

In an unpublished opinion, the Army Court of Criminal Appeals addressed whether "the UCMJ provide[d] ... jurisdiction under the All Writs Act to review an interlocutory appeal on behalf of the government when Article 62 ... does not otherwise permit such review?" *United States v. Reinert*, Nos. 20071195 and 20071343, 2008 WL 8105416 at *1, 2008 CCA LEXIS 526 at *2 (Army Ct. Crim.App. 7 Aug 2008). After analyzing, *inter alia*, Government appeals under Article 62, the All Writs Act and relevant case law, the Army Court "conclude[d] the All Writs Act empowers us to issue a writ of prohibition in aid of our jurisdiction over a pending court-martial, even if the case does not fall strictly within the jurisdiction conferred by Articles 62, 66, 69, 73, UCMJ." *Id.* at *8, 2008 CCA LEXIS 526 at *27. The court articulated "significant concerns for the viability of government interlocutory appeals under the All Writs Act, particularly after *Goldsmith*, [but concluded it was] bound to follow

[CAAF] precedent[.]" *Id.* at *7, 2008 CCA LEXIS 526 at *23.

Notably, the same question exists in the Article III federal courts *vis-à-vis* Government petitions for extraordinary relief and appeal by the United States under 18 U.S.C. § 3731. This is particularly informative as Article 62 was modeled after the statutory basis for "appeal by the United States" in the Article III Courts, 18 U.S.C. § 3731.[4] *See United States v. Brooks*, 42 M.J. 484, 486 (C.A.A.F.1995) ("Article 62 was intended by Congress to be interpreted and applied in the same manner as the Criminal Appeals Act, 18 U.S.C. § 3731." (citation omitted)). Like Article 62, that provision is silent as to what impact, if any, the prescribed appellate procedure has upon the authority of an Article III court to review and act upon petitions for extraordinary relief filed by the Government that are not specifically authorized by 18 U.S.C. § 3731.

The Supreme Court has not specifically addressed this issue. However, in *Will*, the Court vacated a writ of *mandamus* issued by the Court of Appeals for the Seventh Circuit at the request of the Government, but not for want of jurisdiction. The writ issued by the Circuit Court directed a District Court judge to vacate an order requiring the Government to provide certain information to the defendant, but the Supreme Court found the record insufficient to warrant the extraordinary remedy of a writ of *mandamus*. 389 U.S. at 107, 88 S.Ct. 269. In *Will*, the Court discussed the Government's limited right to interlocutory appeal under 18 U.S.C. § 3731, and the jurisprudential reasons for those limitations. *Id.* at 96–97, 88 S.Ct. 269 (citations omitted). The Court acknowledged that

---

3. In a recent unpublished Order, the Air Force Court of Criminal Appeals suggested the answer to this question may be subject to further review without citation to its published opinion in *Mahoney*. *See United States v. Eller*, No. 2013–5, 2013 CCA LEXIS 512, (A.F.Ct.Crim.App. 21 Jun 2013) (Order) ("We need not decide whether the Government may secure, via a petition for mandamus, an interlocutory appellate review of a trial court's order that does not fall within those matters specifically contemplated by Article 62, UCMJ, 10 U.S.C. § 862, because assuming *arguendo* that such review were proper, the petitioner would not prevail.").

4. 18 USCS § 3731. Appeal by United States. "In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment .... from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding .... from a decision or order, entered by a district court of the United States granting the release of a person charged with or convicted of an offense.... The provisions of this section shall be liberally construed to effectuate its purposes."

"[m]andamus ... may never be employed as a substitute for appeal in derogation of these clear policies." *Id.* at 97, 88 S.Ct. 269. But, particularly relevant to our analysis, the Court also acknowledged that *mandamus* had been "invoked successfully where the action of the trial court totally deprived the Government of its right to initiate a prosecution, *Ex parte United States,* 287 U.S. 241, 53 S.Ct. 129, 77 L.Ed. 283 (1932), and where the court overreached its judicial power to deny the Government the rightful fruits of a valid conviction [confinement in accordance with the applicable law], *Ex parte United States,* 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916)." *Id.* at 97–98, 88 S.Ct. 269.

We also find the opinions of various Circuit Courts of Appeals distinguishing the right of the United States to "appeal" under 18 U.S.C. § 3731, and the authority of the Government to seek extraordinary relief persuasive. *See United States v. Vinyard,* 539 F.3d 589, 590 (7th Cir.2008) ("We conclude that appellate jurisdiction under 18 U.S.C. § 3731 is problematic [due to unusual court orders] since the district court did not issue any of the orders described by [18 U.S.C. § 3731].... [T]his is one of those rare cases in which a writ of *mandamus* should issue."); *United States v. Denson,* 603 F.2d 1143, 1145 (5th Cir.1979) (*en banc* ) (stating where trial court exceeded authority in suspending execution of the sentence and placing the defendants on probation, "we hold that, when the writ of mandamus is sought from an appellate court to confine a trial court to a lawful exercise of its prescribed authority, the court

should issue the writ almost as a matter of course.").[5]

In the absence of explicit statutory limitation, or other clear evidence of Congress's intent to limit our authority over petitions for extraordinary relief by the Government, we are not persuaded by the Real Party's argument that exercising jurisdiction over this petition usurps "the limitations placed on [interlocutory] appeals in Article 62 by Congress." Opposition at 7.

■ Clearly, Article 62 provides the Government an express right to interlocutory appeal and expedited appellate review of a discrete number of specified trial court legal determinations. This limited right to Government appeal is consistent with an accused's Constitutional right to a speedy trial and policies behind the "double jeopardy prohibition," and consistent with the disfavored nature of Government appeals and the "narrow categories of orders" appealable by the United States in Article III federal courts. *Will,* 389 U.S. at 96–98, 88 S.Ct. 269.

■ On the other hand, the All Writs Act empowers service Courts of Criminal Appeals to issue all writs "in aid of their respective jurisdiction." If the requested writ is in "aid of [service court] jurisdiction," the universe of potential matters subject to this extraordinary authority necessarily includes a broader, less defined and less definable universe of issues. *See Carlisle v. United States,* 517 U.S. 416, 429, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) ("The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute.")

---

**5.** *See generally United States v. Patterson,* 882 F.2d 595, 596 (1st Cir.1989) ("We now hold that the government did not have a right to appeal the sentence of the district court [under 18 U.S.C. § 3731], but under our mandamus authority reverse on the merits and order resentencing."); *Government of Virgin Islands v. Douglas,* 812 F.2d 822, 832 (3rd Cir.1987) (declining to issue writ of mandamus where statute in question did not mandate imposition of consecutive sentences but acknowledged "[c]hallenges of a district court judge's power to impose a particular sentence fall within the narrow range of cases in which mandamus may be appropriate."); *United States v. Martinez–Zayas,* 857 F.2d 122, 127 (3rd Cir.1988) ("Whether a district court has jurisdiction to reduce a sentence ... and whether the district court possessed authority to im-

pose a particular sentence ... both fall within the narrow range of cases in which mandamus may be appropriate.") (citations and internal quotation marks omitted); *United States v. Prescon Corp.,* 695 F.2d 1236, 1242 (10th Cir.1982) (noting that the court should "not issue a writ of mandamus if other remedies are available .... [a]s we hold that the Government's appeal is well taken pursuant to 18 U.S.C.A. § 3731 and 28 U.S.C.A. § 1291, we will deny the petition for writ of mandamus."); *United States v. Dean,* 752 F.2d 535, 537 (11th Cir.1985) (concluding "when the government alleges that the district court has acted beyond the scope of its lawful authority in reducing the sentence of a convicted criminal defendant ... mandamus, not [government] appeal [under 18 U.S.C. § 3731], is the government's proper remedy[.]").

(citation and internal quotation marks omitted). This lack of definability underpins the "traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche*, 319 U.S. at 26, 63 S.Ct. 938 (citations omitted). Stated another way, it is infeasible to define, in advance, the universe of "exceptional circumstances" that may amount to a judicial "usurpation of power," or "clear abuse of discretion," thus warranting extraordinary relief. *Bankers Life & Casualty Co.*, 346 U.S. at 383, 74 S.Ct. 145.

◼ Reading the All Writs Act and Article 62 in *pari materia*,[6] and consistent with *Dettinger* and *Curtin*, we conclude that nothing in Article 62 precludes this court "from considering an application for extraordinary relief from a trial judge's action only because the petitioner is the Government." *Dettinger*, 7 M.J. at 221–22. For the reasons discussed above, we also conclude that we have the authority under the All Writs Act "to hear petitions for extraordinary relief on behalf of the Government" for issues not subject to appeal by the United States under Article 62.[7] *See Goldsmith*, 526 U.S. at 537, 119 S.Ct. 1538 ("The All Writs Act invests a court with a power essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law.") (citations omitted); *see also* R.C.M. 1203(b), Discussion, Manual for Courts–Martial (1984, 1995, 1998, 2002, 2005, 2008, and 2012 eds.) ("Any party may petition a Court of [Criminal Appeals] for extraordinary relief.").

Of course, the potential scope of appellate review upon a Government petition for extraordinary relief is tempered by requirements that the relief requested be "in aid" of the reviewing court's jurisdiction, not otherwise subject to review, and subject to the high burden borne by the moving party to establish a clear and indisputable right to issuance of the writ and that "issuance of the writ is appropriate under the circumstances." *Hasan*, 71 M.J. at 418 (citing *Cheney*, 542 U.S. at 380–81, 124 S.Ct. 2576). Having found no limit in Article 62 on our authority to entertain the subject writ, we will next determine whether to do so would be in aid of our jurisdiction.

## B. *Is issuance of the writ "in aid of" our jurisdiction?*

◼ For the following reasons we conclude that review of this writ is "in aid" of our jurisdiction under Articles 66(b) and 69(d), UCMJ, and does not constitute an expansion of our existing jurisdiction.

First, the Government's request that we set aside the military judge's ruling on the maximum authorized punishment for this general court-martial seeks " 'to modify an action that was taken within the subject matter jurisdiction of the military justice system.' " *Kastenberg*, 72 M.J. at 368 (quoting *Denedo*, 66 M.J. at 120). The military judge's ruling directly affects the "sentence" that "could be imposed in a court-martial proceeding" and is thus within our jurisdiction. *See Goldsmith*, 526 U.S. at 535, 119 S.Ct. 1538 ("Air Force's action to drop respondent from the rolls was an executive action, not a 'finding' or 'sentence,' § 867(c), *that was (or could have been) imposed in a court-martial proceeding,* [thus beyond the

---

**6.** It is generally assumed that "[o]ther statutes dealing with the same subject as the one being construed—commonly referred to as statutes in *pari materia*—comprise another form of extrinsic aid useful in deciding questions of interpretation [and] should be construed together." *See* 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION §§ 51.01 (5th ed. 1992); *see also United States v. Lillyblad*, 56 M.J. 636, 639 (N.M.Ct.Crim.App.2001).

**7.** To be clear, this conclusion does not address whether service Courts of Criminal Appeals may entertain Government petitions for extraordinary

relief on matters subject to appeal by the United States under Article 62, UCMJ. *See Goldsmith*, 526 U.S. at 537, 119 S.Ct. 1538 (citing 19 *Moore's Federal Practice* § 201.40 ("[A] writ may not be used ... when another method of review will suffice")); *see also Dettinger*, 7 M.J. at 222 (quoting Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure:* Jurisdiction § 3936 at 268) ("a right to appeal would make unnecessary proceedings for extraordinary relief. When review by appeal is allowed, 'the need for the writs has vanished.' ").

CAAF's jurisdiction under the All Writs Act][.]") (emphasis added) (footnote omitted). Indeed, the potential impact on sentence is manifest, where the military judge's ruling precludes award of a punitive discharge and limits potential confinement to 30 days for two specifications alleging sexual penetration of a female, sleeping or otherwise incapable of consenting due to impairment, conduct historically punishable by confinement for 30 years or more and a punitive discharge.[8] *See also Kastenberg*, 72 M.J. at 368 ("To establish subject-matter jurisdiction, the harm alleged must have had 'the potential to directly affect the findings and sentence.'") (quoting *Ctr. For Constitutional Rights v. United States*, 72 M.J. 126, 129 (C.A.A.F.2013)); *Kreutzer v. United States*, 60 M.J. 453 (C.A.A.F.2005) (issuing writ of *mandamus* directing removal of Petitioner from death row after death sentence was set aside by Court of Criminal Appeals, holding "that continued confinement on death row as an unsentenced person [wa]s in violation of law and regulation [and within their] statutory jurisdiction.").

Second, the military judge's determination that the maximum punishment authorized is that awardable at summary court-martial, if undisturbed, thwarts potential automatic review by this court under Article 66, UCMJ, as any punishment awarded consistent with that ruling would not qualify for automatic review.[9] A determination that such a ruling is not reviewable by this court would result in a jurisdictional paradox, namely that a trial court ruling depriving an appellate court of jurisdiction is unreviewable by that appellate court. Such a paradox is both illogical

and unsupported in law. *See Roche*, 319 U.S. at 25, 63 S.Ct. 938 (stating appellate court authority to issue writs of *mandamus* "is not confined to the issuance of writs in aid of jurisdiction already acquired by appeal but extends to [cases within] its appellate jurisdiction although no appeal has been perfected. Otherwise the appellate jurisdiction could be defeated and the purpose of the statute authorizing the writ thwarted by unauthorized action of the district court obstructing the appeal." (citation omitted)).

Finally, we conclude that review of this writ is "in aid" of our jurisdiction as we could also acquire appellate jurisdiction over this case if the Judge Advocate General exercised her authority under Article 69(d), UCMJ, to forward the record of trial to us for review following a finding of guilty.[10] *Id.*

## V. Issuance of the Writ of *Mandamus*— Necessary or Appropriate?

A writ of *mandamus* is "a drastic instrument which should be invoked only in truly extraordinary situations." *Labella*, 15 M.J. at 229. "To justify reversal of a discretionary decision by mandamus, the judicial decision ... must amount to a judicial usurpation of power ... or be characteristic of an erroneous practice which is likely to recur." *Id.* (internal citations and quotation marks omitted). "To prevail on a writ of mandamus, [the Petitioner] must show that: (1) there is no other adequate means to attain relief; (2) the right to issuance of the writ is clear and indisputable; and (3) the issuance of the writ is appropriate under the circumstances." *Hasan*, 71 M.J. at 418 (citing *Cheney*, 542 U.S. at 380–81, 124 S.Ct. 2576).

---

8. Death was an authorized punishment for the charged conduct as "rape" until the 2006 revision of Article 120, UCMJ, recast the charged conduct as "aggravated sexual assault" punishable by confinement for 30 years. Art. 120, UCMJ; *see generally* MCM (1951–2005 eds.); *but see Coker v. Georgia*, 433 U.S. 584, 592, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (holding that the death penalty is "grossly disproportionate and excessive punishment for the crime of rape and is therefore forbidden by the Eighth Amendment as cruel and unusual punishment." (footnote omitted)).

9. Except when the right to appellate review has been waived or withdrawn, "[t]he Judge Advo-

cate General shall refer to a Court of Criminal Appeals the record in each case of trial by court-martial—(1) in which the sentence, as approved, extends to death, dismissal ... dishonorable or bad-conduct discharge, or confinement for one year or more[.]" Art. 66(b), UCMJ.

10. "(a) The record of trial in each general court-martial that is not otherwise reviewed under [Article 66] shall be examined in the office of the Judge Advocate General if there is a finding of guilty .... (d) A Court of Criminal Appeals may review, [under Article 66, UCMJ] ... any court-martial case which .... is sent to the Court of Criminal Appeals by order of the Judge Advocate General[.]" Arts. 69(a) and (d), UCMJ.

With these principles in mind, we turn to a discussion of the Government's petition.

## A. Any "other adequate means to attain relief" requested?

 Issuance of a writ of mandamus is the only available means for the Government to attain the relief requested—(e.g., set aside of the military judge's ruling on the maximum authorized punishment and authorization of greater maximum punishment). As previously discussed, the Government and Real Party agree that the military judge's ruling is not subject to interlocutory appeal by the United States under Article 62.

Likewise, the relief requested by the Government is not attainable on direct review of any potential findings and sentence approved by a convening authority under Articles 66 or 69, UCMJ.

The Judge Advocate General's authority under Article 69 to "modify or set aside the findings or sentence or both," if "found unsupported in law" provides no authority to authorize a rehearing where greater punishment could be imposed. Arts. 69(a) and (b), UCMJ. Assuming the Judge Advocate General exercised her authority under Article 69(d), UCMJ, and forwarded the record of trial to this court for review under Article 66, we would not be empowered to effectuate the requested relief, as "[we] may act only with respect to the findings and sentence as approved by the convening authority." Art. 66(c), UCMJ. The Government has no right to direct appeal of the sentence adjudged and approved under these circumstances. Indeed, such action would offend fundamental Constitutional Due Process and Double Jeopardy protections. U.S. CONST. amend. V.

We therefore conclude there are "no other adequate means to attain [the] relief" requested. Hasan, 71 M.J. at 418 (citation omitted).

## B. Is the right to issuance of the writ "clear and indisputable"?

The Government asserts that its right to issuance of a writ of mandamus is "clear and indisputable," citing four reasons for concluding the military judge usurped his judicial authority by "ruling ... contrary to both the statute he attempted to apply and the regulation that implements that statute." Petition at 12. First, the Government argues that the sexual assaults alleged are "listed in Part IV" of the 2012 edition of the Manual for Courts–Martial; that application of R.C.M. 1003 provides the correct maximum authorized punishment; and that the Ex Post Facto clause is inapplicable to the Executive Order issued 15 May 2013 as that order reduced the maximum authorized punishment. Second, the Government asserts that if the sexual assaults alleged are "not listed in Part IV" of the 2012 edition of the Manual, then the former Article 120(c)(2), UCMJ, or Article 128, UCMJ (assault consummated by a battery), qualify as a closely related offense "listed in Part IV" of the Manual and provide the maximum punishment authorized, under R.C.M. 1003(c)(1)(B)(i), for the offenses charged. Third, if we are not persuaded by the first and second arguments, the Government argues that under R.C.M. 1003(c)(1)(B)(ii) the maximum punishment may be derived from 18 U.S.C. 2242(2)(A–B) (2012), a provision that is "essentially the same" as the offense charged or "custom of the service." And fourth, the Government argues that the military judge erroneously applied the Rule of Lenity.[11]

The Real Party replies that the Government is not entitled to the requested relief because: (1) the President failed to prescribe maximum punishments for the charged offenses until 15 May 2013, almost 11 months after the effective date of those offenses; (2) the Government failed to establish a clear and indisputable right to relief because the military judge acted within his discretion in

---

11. *United States v. Thomas*, 65 M.J. 132, 135 (C.A.A.F.2007) (noting military courts have "long adhered to the principle that criminal statutes are to be strictly construed, and any ambiguity resolved in favor of the accused ... [when] the legislative intent is ambiguous, we resolve ambiguity in favor of the accused.") (citation omitted);

*see also United States v. Baker*, 14 M.J. 361, 374 (C.M.A.1983) ("This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based upon no more than a guess as to what Congress intended." (citation omitted)).

interpreting an ambiguous statute; or (3) even if the court finds the military judge's ruling incorrect, such a conclusion would be "far from indisputable."

We conclude that the Government has established a right to the requested relief that is "clear and indisputable." *Hasan,* 71 M.J. at 418. The military judge misapplied the President's mandated offense-based limits on punishments to the charged sexual assaults and rendered a ruling on the authorized punishment that was clearly contrary to statute, settled case law, and the Rules for Courts–Martial. For the reasons discussed below, application of the President's mandated offense-based limits on punishments to the offenses charged leads to the inevitable conclusion that the Petitioner has a "clear and indisputable" right to the requested relief.

### Discussion

The Constitution invests in Congress the authority "[t]o make Rules for the Government and Regulation of the land and naval Forces," including the power to define criminal punishments, as well as to delegate that authority to the President. *Loving v. United States,* 517 U.S. 748, 759, 767–68, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996) (citing U.S. Constitution at Art. I, § 8, cl. 14) (additional citations omitted). Congress exercised those powers by declaring that "general courts-martial ... may, under such limitations as the President may prescribe, adjudge any punishment not forbidden by [the UCMJ], including the penalty of death when specifically authorized by [the UCMJ]," and "[t]he punishment which a court-martial may direct for an offense may not exceed such limits as the President may prescribe for that offense." Arts. 18 and 56, UCMJ. Exercising this delegated authority, the President promulgated Rules for Courts–Martial which provide:

> Rule 1002. Sentence determination. Subject to limitations in this Manual, the sentence to be adjudged is a matter within the discretion of the court-martial; except when a mandatory minimum sentence is prescribed by the code, a court-martial

may adjudge any punishment authorized in this Manual ....

Rule 1003. Punishments

(a) *In general.* Subject to the limitations in this Manual, the punishments authorized in this rule may be adjudged in the case of any person found guilty of an offense by a court-martial.

(b) *Authorized punishments.* Subject to the limitations in this Manual, a court-martial may adjudge only the following punishments: [including reprimand, forfeiture of pay and allowances, reduction in pay grade, confinement and punitive separation].

Consistent with the authority delegated by Congress in Article 56, UCMJ, the President specified "[l]imits on punishments" "[b]ased on offenses." R.C.M. 1003(c)(1). In so doing, the President established a binary analytical framework for offense-based limits on punishments: that framework employs mutually exclusive criteria, dependent upon whether the offenses are "listed" or "not listed" "in Part IV [of the Manual for Courts–Martial]." R.C.M. 1003(c)(1)(A)-(B).

### 1. Offenses listed in Part IV of the Manual for Courts–Martial

■■■ For *"Offenses listed in Part IV* [of the Manual for Courts–Martial] ... [t]he maximum limits for the authorized punishments of confinement, forfeitures and punitive discharge (if any) are set forth for each offense listed in Part IV of this Manual. These limitations are for each separate offense, not for each charge." R.C.M. 1003(c)(1)(A). In his ruling, the military judge acknowledged that the 2012 edition of the Manual for Courts–Martial includes the statutory text of the charged offense in Part IV, but found R.C.M. 1003(c)(1)(A) inapplicable. He concluded that:

> because the rulemaking process (including modes of proof, explanations, and the like, areas commended to the President under a separate provision, Article 36) has only recently been completed [sic] [12] and an Executive Order issued, those amendments

---

12. The limits on punishment are the only conforming changes ordered, to date, by the President. *See* Executive Order 13643 of 15 May 2013.

have just now become a full-fledged part of the MANUAL FOR COURTS-MARTIAL. *The current version of the Article 120 is thus not an offense listed in Part IV of the MANUAL, so the guidance of R.C.M. 1003(c)(1)(A) does not apply.*

AE V at 5 (emphasis added).

The Government acknowledges that the amended Article 120's statutory text was inserted in the 2012 Manual by the JSC, not pursuant to Executive Order. Petition at 14–16 (comparing Exec. Order No. 10,214 (designated Manual for Courts–Martial, 1951 ed.) with the 2005, 2008, and 2012 editions of the Manual.) (Appendix 2 is editorially revised). However, the Government asserts that the military judge's conclusion that Presidential rule-making is required to insert the statutory text into Part IV of the Manual is unsupported by precedent, and that the Joint Service Committee on Military Justice (JSC) did not err by inserting the statutory text of Article 120 into Part IV of the 2012 Manual. Hence, the Government argues that Article 120 was an offense listed in Part IV of the Manual within the meaning of R.C.M. 1003(c)(1)(A). Petition at 13–17.

We find no "clear abuse of discretion" by the military judge with respect to this portion of his ruling. We also reject the Government's assertion that the JSC's inclusion of the revised Article 120's statutory text in the 2012 Manual, without Presidential approval, renders that offense *"listed in Part IV"* of the Manual, within the meaning of R.C.M. 1003(c)(1)(A), the Presidentially-prescribed process for determining offense-based limits on punishment for the following reasons.

First, the "plain language" of the Manual's Preamble [13] (Preamble) and the relevant Department of Defense Directive unambiguously indicate that only the President may amend the Manual, and defines the JSC's advisory role in identifying and making amendments. Preamble at ¶ 4; Department of Defense Directive 5500.17; *see also United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007) ("We use well-established principles of

statutory construction to construe provisions in the *Manual for Courts–Martial*." (citations omitted)). The Manual for Courts–Martial consists of the "Preamble, the Rules for Courts–Martial, the Military Rules of Evidence, the Punitive Articles, and Nonjudicial Punishment Procedures (Part I–V)." Preamble at ¶ 4. Amendments to Parts I–V of the Manual "will be identified by publishing the relevant Executive order containing those amendments in its entirety in a Manual appendix." MCM (2008 ed.), Preamble at 4, Discussion. The CAAF has also ruled that "[t]he authority to revise the Manual, an Executive Order, is vested in a single individual, the President." *United States v. Tualla*, 52 M.J. 228, 231 (C.A.A.F.2000).

Neither the Preamble, nor the implementing DoD Directive, explicitly empower or otherwise imply that the JSC has independent authority to issue substantive amendments to Part IV of the Manual. *See* Preamble; DoD Directive 5500.17. On the contrary, both authorities acknowledge the JSC's responsibility to review the Manual and propose amendments to the Department of Defense for "consideration by the President." Executive Order 12473, which prescribed the 1984 Manual and which is cited in every Executive Order amending the Manual since, also acknowledges the advisory role of the JSC in reviewing the Manual and, via the Secretary of Defense, "recommend[ing] to the President any appropriate amendments."

A key issue in controversy is what constitutes being "listed in Part IV" of the Manual. The parties cite no case law or other authority prescribing how an "offense" is "listed in Part IV," and we find no definitive answer to this question. It is not in dispute that the statutory language of the amended Article 120 appears in Paragraph 45, Part IV of the 2012 Manual, or that the statutorily decreed effective dates of those amendments encompass the charged sexual assaults. Nor is it in dispute that the Real Party is subject to trial and potential punishment for violating the amended Articles 120(b)(2) and

---

**13.** Paragraph 4 of the Preamble has remained essentially unchanged since the 1984 edition of the Manual.

120(b)(3)(A), UCMJ. We note that inclusion of the statutory text of the amended Article 120 in the Manual for Courts–Martial has no effect upon the legal efficacy of trial or potential punishment for any violation of that law after its effective date. The key question here is whether the JSC's insertion of the statutory text in Part IV of the 2012 edition of the Manual renders the offense "listed in Part IV" of that Manual for purposes of effectuating a Presidentially-enumerated offense-based limit on punishment. We find the Government's suggestion that the JSC is empowered to make substantive, binding changes to the Manual, including "list[ing]" an offense in Part IV without Presidential approval or an Executive order, to be unsupported by the plain language of the Manual and DoD Directive, and contrary to case law. *Tualla*, 52 M.J. at 231.

Second, the text included as Paragraph 45 in Part IV of the 2012 Manual does not include "[t]he maximum limits for the authorized punishments of confinement, forfeitures and punitive discharge" contrary to the plain language of R.C.M. 1003(c)(1)(A)(i). The rule addressing offense-based limits on punishments states that those matters "are set forth for each offense listed in Part IV of this Manual." R.C.M. 1003(c)(1)(A)(i). Standing alone, this inconsistency could be viewed as an administrative oversight; however, the Government's concession that the JSC inserted the statutory text of the revised Article 120 into the Manual is supported by the "[n]ote" following the statutory text in the 2012 Manual which acknowledges that the President had not prescribed the conforming changes at the time the Manual was published.[14] Notably, the limits on punishment are the only conforming changes ordered, to date, by the President. *See* Executive Order 13643. Clearly, the 2012 Manual includes amendments directed by Executive Order (*see* 2012 Manual at Appendix 25; Executive Order 13468 of 24 Jul 2008; Executive Order 13552 of 31 Aug 2010, and Executive Order 13593 of 13 Dec 2011). However, with the exception of the 15 May 2013 Executive Order, there is no evidence before this court that the sole authority empowered to revise Part IV of the Manual, the President, exercised his authority to do so with respect to paragraph 45 of Part IV of the 2012 Manual. *See Tualla*, 52 M.J. at 231. Instead, the Government acknowledges that the President did not amend that paragraph, and the drafters' "note" supports that acknowledgement.

We conclude that, prior to 15 May 2013, the revised Article 120 was not an *"Offense[ ] listed in Part IV"* of the Manual within the meaning of the Presidentially-prescribed process for determining offense-based limits on punishment. R.C.M. 1003(c)(1)(A). Only the President may amend Part IV of the Manual, and prior to 15 May 2013, he had not done so with respect to the revised Article 120. Executive Order 13643. Therefore, the appropriate offense-based criteria for determining the authorized punishment prior to that date, was for an *"Offense[ ] not listed in Part IV"* of the Manual. R.C.M. 1003(c)(1)(B).[15] For the reasons discussed further below, Constitutional *ex post facto* prohibitions are not implicated as Executive Order 13643, which established maximum punishments for the offenses alleged effective 15 May 2013, did not increase the punishments previously authorized for those offenses through application of R.C.M. 1003(c)(1)(B). *Cf. Collins v. Youngblood*, 497 U.S. 37, 41–42, 110 S.Ct. 2715, 111 L.Ed.2d

---

14. "The subparagraphs that would normally address elements, explanation, lesser included offenses, maximum punishments, and sample specifications are generated under the President's authority to prescribe rules pursuant to Article 36. At the time of publishing this MCM, the President had not prescribed such rules for this version of Article 120. Practitioners should refer to the appropriate statutory language and, to the extent practicable, use Appendix 28 [Punitive Articles Applicable to Sexual Offenses committed during the period 1 October 2007 through 27 June 2012] as a guide." MCM (2012 ed.), Part IV, ¶ 45, at IV–70, Note.

15. We need not determine whether Executive Order 13643, which declared maximum punishments for the charged offenses but included no other conforming changes, rendered the offenses "listed" in Part IV of the Manual. The maximum punishment authorized at arraignment was fixed by Executive Order 13643, and was the same regardless whether the offense is "listed" or "not listed" in Part IV of the Manual on or after 15 May 2013. *See* "Maximum Punishment" at *infra*.

30 (1990) ("the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them . . . . [including] [e]very law that *changes the punishment*, and inflicts a *greater punishment* [.]" (citation omitted)).

## 2. Offenses not listed in Part IV of the Manual for Courts–Martial

Having determined that, prior to May 15, 2013, the charged offenses were "not listed" in Part IV of the 2012 Manual for purposes of R.C.M. 1003(c)(1)(A), we now turn to the separate provisions of R.C.M. 1003(c)(1)(B)(i)-(ii). In doing so, we conclude that the maximum authorized punishment for the alleged sexual assaults includes a dishonorable discharge and 30 years confinement.

For offenses "not listed in Part IV" of the Manual, the President established two related, but alternative bases in R.C.M. 1003(c)(1)(B) for determining offense-based limits on punishment dependent upon whether the charged offense: [16] (1) is closely related to or necessarily included in an offense listed in Part IV of the Manual, and, if neither, then (2) whether the charged offense is punishable as authorized by the United States Code or as authorized by custom of the service. After brief discussion of each provision of R.C.M. 1003(c)(1)(B)(i) and (ii), the military judge concluded that those provisions did not resolve the issue of maximum authorized punishment. AE V at 3–6. The Government argues that if the sexual assaults alleged are "not listed in Part IV" of the 2012 Manual, then the authorized maximum punishment includes confinement for 30 years and a dishonorable discharge, regardless whether R.C.M. 1003(c)(1)(B)(i) or (ii) controls. The Government also asserts that the military judge's ruling on the authorized maximum punishment was "a judicial usurpa-

tion of power" rendering their right to issuance of the requested writ "clear and indisputable."

We agree that the military judge erroneously interpreted and applied R.C.M. 1003(c)(1)(B)(i)-(ii) and usurped his judicial authority by concluding that the maximum sentence authorized for each sexual assault included no punitive discharge and confinement for one month.

### a. R.C.M. 1003(c)(1)(B)(i): Included or related offenses

 The military judge acknowledged the merit of referring to the limits on punishment in "the predecessor [offense of aggravated sexual assault] to the current Article 120 [sexual assault] [listed] in Part IV of the Manual . . . . [given] some similarities in [the] elements and definitions[;] but found such reference "inappropriate" because at the time of the misconduct alleged "the activity was not a violation of the 2006 version of Article 120." AE V at 4–5. He also acknowledged that "one could conclude that because a sexual act with an unconscious or intoxicated person is related to an offense that is listed in the pre–15 May 2013 Part IV of the MANUAL, then the maximum punishment for the previously extant offense should apply[,]" but apparently rejected that conclusion because "no case interpreting Rule 1003(c)(1)(B) has ever applied its provisions to Articles 80 through 132 of the [UCMJ]." *Id.* at 5.[17] As a preliminary matter neither the Government nor the Real Party assert that the charged offenses are "included in" any offense listed in Part IV of the Manual for purposes of R.C.M. 1003(c)(1)(B)(i).

Assuming, as did the military judge and the Government, that the predecessor offense to those charged, "aggravated sexual

---

16. "For an offense not listed in Part IV of this Manual which is included in or closely related to an offense listed therein the maximum punishment shall be that of the offense listed[.]" R.C.M. 1003(c)(1)(B)(i). The "closely related" language of this rule applies only to offenses listed in Part IV of the Manual. *United States v. Beaty*, 70 M.J. 39, 42 (C.A.A.F.2011) (citation omitted). An offense neither "included in or closely related to an offense listed [in Part IV of the Manual] is punishable as authorized by the

United States Code, or as authorized by custom of the service." R.C.M. 1003(c)(1)(B)(ii).

17. The plain language of R.C.M. 1003(c)(1)(B) includes no limits on its applicability to offenses under Articles 133, 134, or otherwise. *See Lewis*, 65 M.J. at 88 ("The plain language [of the Rule] will control, unless use of the plain language would lead to an absurd result.") (citations omitted).

assault" remains listed in Part IV of the Manual in the absence of Presidential direction removing it therefrom, we agree with the Government that "aggravated sexual assault," applicable to misconduct committed during the period 1 October 2007 through 27 June 2012 is "closely related" to the charged sexual assaults. In fact, the charged offenses are a revised version of "aggravated sexual assault," intended to resolve "confusion" over use of the term "aggravated" in the 2007 version and to clarify "previously confusing language from the 2007 version regarding the state of the victim's consciousness[.]" MCM (2012 ed.), Analysis of Punitive Articles, ¶ 45, A23–15. Comparison of the statutory elements further illustrates the close relationship between these two offenses.[18]

Both statutes define "sexual act" as including "contact between the penis and the vulva ... and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight." Compare 10 U.S.C.S. § 920(t)(1)(A) (2008) and 10 U.S.C.S. § 920(g)(1)(A) (2012). Both statutes also require: (1) commission of a sexual act upon another person, (2) who is incapacitated or incapable of consenting or declining participation in that sexual act.[19] The maximum punishment authorized for "aggravated sexual assault" under the previous version of

Article 120 includes a dishonorable discharge and confinement for 30 years, the same limits on punishment imposed by the President for the charged offenses by Executive Order on 15 May 2013.

Though not charged here, sodomy, an offense listed in Part IV of the Manual, is also "closely-related" to conduct now punishable as sexual assault in violation of Article 120(b). Compare Arts. 120(b) and 125, UCMJ; see also Manual for Courts–Martial (2012 ed.), Analysis of Punitive Articles, ¶ 45, App. 23, at A23–15 ("The FY12 NDAA failed to repeal Article 125, thus criminalizing forcible sodomy offenses under both Article 120 and Article 125.").[20] The revised offense of "sexual assault" also criminalizes conduct (contact between the penis ... and anus or mouth ... occurs upon penetration, however slight) punishable as sodomy in violation of Article 125, UCMJ. Compare Articles 120(b) and 120(g)(1)(A)-(B) and Article 125, UCMJ. Forcible sodomy, in violation of Article 125, is punishable by dishonorable discharge and confinement for life without the possibility of parole. MCM, Part IV, ¶ 51e (2012 ed.).

The military judge's conclusion that aggravated sexual assault in violation of the 2007 version of Article 120(c) is not closely related to the alleged misconduct is inconsistent with his assumption that that offense remained

---

**18.** "10 U.S.C. § 920(c)(2) (2007). Aggravated Sexual Assault. Any person subject to this chapter who ... (2) engages in a sexual act with another person ... [who] is substantially incapacitated or substantially incapable of —(A) appraising the nature of the sexual act; (B) declining participation in the sexual act; or (C) communicating unwillingness to engage in the sexual act; is guilty of aggravated sexual assault and shall be punished as a court-martial may direct."

10 U.S.C. 920(b) (2012), "Sexual assault. Any person subject to this chapter who ... (2) commits a sexual act upon another person when the person knows or reasonably should know that the other person is asleep, unconscious, or otherwise unaware that the sexual act is occurring; or (3) commits a sexual act upon another person when the other person is incapable of consenting to the sexual act due to—(A) impairment by any drug, intoxicant, or other similar substance, and that condition is known or reasonably should be known by the person ... is guilty of sexual assault and shall be punished as a court-martial may direct."

**19.** The most significant distinction in the offenses is that the amended Article 120(b)(2) or (3) include a scienter or knowledge element not present in the aggravated sexual assault offense, Article 120(c). Specifically that the "[accused] knows or reasonably should know" the victim "is asleep, unconscious, or otherwise unaware that the sexual act is occurring, or "that [the incapacity to consent to a sexual act due to impairment] is known or reasonably should be known by the [accused]."

**20.** We find the Government's alternative argument that Article 128, assault consummated by a battery is a closely related offense to the charged sexual assaults inapposite. Assault consummated by a battery in violation of Article 128, UCMJ, likely qualifies as a lesser included offense of sexual assault in violation of Article 120 under the statutory elements test, see United States v. Jones, 68 M.J. 465 (C.A.A.F.2010); however, the greater offense, the alleged sexual assault is not "included in" the assault consummated by a battery. R.C.M. 1003(c)(1)(B)(i).

listed in Part IV of the Manual, and the plain language of R.C.M. 1003(c)(1)(B)(i). The rule requires only that the comparison offense be listed in Part IV of the Manual and "closely related," not that the alleged conduct be punishable in violation of that "closely related offense," as implied by the military judge's ruling. R.C.M. 1003(c)(1)(B)(i); *Beaty*, 70 M.J. at 42. Again assuming, as did the military judge, that the predecessor offense to those charged, "aggravated sexual assault" remains listed in Part IV of the Manual, then the military judge's erroneous judicial action exceeded the recognized boundaries of judicial authority and constituted a "usurpation of judicial power." *Bankers Life & Casualty Co.*, 346 U.S. at 383, 74 S.Ct. 145.

### b. R.C.M. 1003(c)(1)(B)(ii): Punishable as authorized by the U.S. Code

 Assuming, as did the military judge, that the charged offenses are not listed in Part IV of the Manual, and assuming *arguendo*, that the offenses are not included in or closely related to an offense listed therein, we next turn to R.C.M. 1003(c)(1)(B)(ii). "An offense not listed in Part IV and not included in or closely related to any offense listed therein is punishable as authorized by the United States Code[.]" R.C.M. 1003(c)(1)(B)(ii). The military judge "*reject[ed] the suggestion* to look to other, analogous, statutes for guidance as provided in R.C.M. 1003(c)(1)(B)(ii)." AE V at 6 (emphasis added). He commented that "[t]he plain language of the Rule directs consulting "the United States Code" for similar offenses if there is no punishment provided for a Part IV offense. Title 10 is indisputably part of the United States Code, and it provides for no punishments in these new Article 120 offenses." *Id.*

Citing R.C.M. 1003(c)(1)(B)(ii), the Government argues that the maximum punishment may be derived from 18 U.S.C. 2242(2)(A–B)(2012), a separate criminal statute that is "essentially the same" as the charged offenses. Petition at 31–32. We agree.

We find the military judge's conclusion that the President's reference to the U.S. Code for determining the authorized maximum punishment was limited to Title 10 was a "clearly erroneous" application of a Presidentially-enumerated rule for determining maximum punishment by reference to the United States Code. In "reject[ing]" the President's "suggestion to look to other, analogous, statutes," we conclude that the military judge ignored the plain language of the rule, erroneously treated application of a non-discretionary rule as discretionary, ignored judicial precedent, and clearly exceeded the scope of his judicial authority for the following reasons.

First, application of R.C.M. 1003(c)(1)(B)(ii) is not discretionary, as implied by the military judge's use of the word "suggestion," but is mandated by the President. The President declared that "[a]n offense not listed in Part IV and not included in or closely related to any offense listed therein *is punishable* as authorized by the United States Code[.]" R.C.M. 1003(c)(1)(B)(ii) (emphasis added). The rule affirmatively declares that if the specified conditions-precedent are satisfied, the offense "is punishable as authorized by the United States Code." The military judge offers no support for his construction of this unambiguous mandate as a "suggestion" to look at other portions of the U.S. Code, and we have found none.

Second, the text of the rule includes no restriction to offenses punishable under Title 10, but instead contemplates consideration of offenses under other Titles of the Code. In fact, the rule explicitly equates periods of authorized confinement to military-specific punishments, an equation essential to determination of authorized court-martial punishments for non-military offenses under the United States Code. This conclusion is further supported by the Manual's analysis. "Subsection[ ](1)(B) [is] based on paragraph 127c(1) of MCM, 1969(Rev.)." MCM (2008 and 2012 eds.), Analysis of R.C.M. 1003(c), App. 21, at A21–74 and A21–75 respectively. The cited section of the 1969 and 1951 Manuals explicitly reference "Title 18" and unambiguously reflect that this mandate applies to the entire U.S. Code, not just Title 10 and the Uniform Code of Military Justice. *See also* MCM, 1969 (Rev.), ¶ 127c(1) and MCM, 1951, ¶ 127c ("Offenses not listed in the table,

and not included within an offense listed, or not closely related to either, remain punishable as authorized by the United States Code (see, generally, Title 18) or the Code of the District of Columbia[.]").

The unambiguous sweep of this regulation to include United States Code provisions outside Title 10 is also apparent in case law. *See United States v. Leonard,* 64 M.J. 381, 383 (C.A.A.F.2007) (finding no abuse of discretion in setting the maximum punishment for a specification and charge of possession of visual depictions of minors engaging in sexually explicit activity by reference to the maximum punishment authorized by 18 U.S.C. § 2252(a)(2)); *see also United States v. Jackson,* 38 C.M.R. 378, 381 (C.M.A.1968) and *United States v. Williams,* 17 M.J. 207, 216–17 (C.M.A.1984) (upholding sentence for kidnapping under clauses 1 or 2 of Article 134 by referencing the maximum sentence for a violation of the federal kidnapping statute).

Applying the mandate of R.C.M. 1003(c)(1)(B)(ii), we conclude that "Sexual abuse" punishable under 18 U.S.C. § 2242(2)(A)-(B) is "essentially the same" or "directly analogous" to the charged sexual assaults. *Leonard,* 64 M.J. at 384. "Sexual abuse" is punishable by confinement up to "life," and provides a limitation on the punishment authorized for the alleged sexual assaults.

Comparison of the statutory elements illustrates the similarities between the offenses; indeed the acts alleged as sexual assault in the charged offense describe acts punishable as "sexual abuse" under 18 U.S.C. § 2242(2)(A)-(B).[21] Both statutes define "sexual act" as including "contact between the penis and the vulva or anus or mouth, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight[.]" 10 U.S.C.S. § 920(g)(1)(A); *compare with* 18 U.S.C.S. § 2246(2)(A). Both statutes require: (1) knowing engagement of a sexual act with another person, (2) who is incapacitated or incapable of consenting or declining participation in that sexual act.[22]

This similarity is not coincidental. The Fiscal Year 2006 National Defense Authorization Act (NDAA) "brought UCMJ sexual misconduct provisions into alignment with similar provisions applicable in the United States District Courts." *United States v. Neal,* 67 M.J. 675, 679 (N.M.Ct.Crim.App. 2009) (citing MCM (2008 ed.), Analysis of Punitive Articles, A23–15, and 18 U.S.C. §§ 2241 and 2244), *aff'd,* 68 M.J. 289 (C.A.A.F.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 121, 178 L.Ed.2d 32 (2010). More relevant here, "Aggravated Sexual Assault," the predecessor offense to the "Sexual Assault" alleged, "[was] generally based on the Sexual Abuse Act of 1986, 18 U.S.C. Sections 2241–2245." MCM (2008 ed.), Analysis of Punitive Articles, ¶ 45f, A23–15.

The military judge's flawed interpretation of this Presidentially-mandated rule was clearly erroneous and inconsistent with the plain language of the rule, case-law, and canons of statutory construction. Such an erroneous judicial action exceeds the recognized boundaries of judicial authority and constitutes a "usurpation of judicial power." *Bankers Life & Casualty Co.,* 346 U.S. at 383, 74 S.Ct. 145.

---

**21.** "18 U.S.C. § 2242 (2012). Sexual abuse. Whoever ... knowingly ... (2) engages in a sexual act with another person if that other person is—(A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act ... shall be ... imprisoned for any term of years or for life."

"10 U.S.C. 920(b) (2012), "Sexual assault. Any person subject to this chapter who ... (2) commits a sexual act upon another person when the person knows or reasonably should know that the other person is asleep, unconscious, or otherwise unaware that the sexual act is occurring; or (3) commits a sexual act upon another person when the other person is incapable of consenting to the sexual act due to—(A) impairment by any drug, intoxicant, or other similar substance, and that condition is known or reasonably should be known by the person ... is guilty of sexual assault and shall be punished as a court-martial may direct."

**22.** The only distinction of note between the offenses is that the amended Article 120(b) requires more explicit knowledge. The Title 18 offense requires the accused "knowingly ... engage in a sexual act," while the revised Article 120(b)2 requires that the accused "knows or reasonably should know of" the victim's incapacity or inability to consent to the sexual act.

### c. R.C.M. 1003(c)(1)(B)(ii): Custom of the Service

"An offense not listed in Part IV and not included in or closely related to any offense listed therein is punishable ... as authorized by the custom of the service." R.C.M. 1003(c)(1)(B)(ii).

 The military judge acknowledged "that past statutes and customs may support a cry for 'substantial punishment' that approaches the jurisdictional maximum of a general court-martial," but then commented "[u]nfortunately ... the 'custom of the service' language appears in a portion of [R.C.M.] 1003(c)(1)(B)(ii) that is inapplicable to the [charged offenses]." AE V at 6 (citation omitted). He further commented that the Government has "likewise failed to present evidence of any 'custom of the service' specific to the newly enacted legislation." *Id.* (citation omitted).

The phrase "custom of the service" for purposes of determining maximum punishment is not explicitly defined in the UCMJ or the Manual. The 1951 and 1969 Manuals included reference to "custom of the service" in the context of punishment as a limitation on forms of punishment. Chapter *XXV,* paragraph 125 (MCM, 1951 and 1969 ed.) ("Courts-martial shall not impose any punishment not sanctioned by custom of the service, such as carrying a loaded knapsack, shaving the head, placarding, pillorying, placing in stocks, or tying up by the thumbs."). The Manual has long-defined that phrase, in the context of a breach of custom of the service, as follows:

> In its legal sense, "custom" means more than a method of procedure or a mode of conduct or behavior which is merely of frequent or usual occurrence. Custom arises out of long established practices which by common usage have attained the force of law in the military or other community affected by them.

MCM (2008 and 2012 eds.), Part. IV, ¶ 60c(2)(b); *see also Beaty,* 70 M.J. at 49–50 (Baker, J., dissenting).

We find ample evidence to conclude that punishment of the charged conduct constitutes a "custom of the service," under both the plain language of the phrase and as long defined in the Manual. Penile penetration of the sexual organ of a female: (1) incapable of consenting due to impairment by an intoxicant (known by or reasonably should have been known by the accused), and/or (2) sleeping (then known or reasonably should have been known by the accused) has been punishable by court-martial since at least 1951. The alleged conduct was punishable as "Rape" from 1951 until 30 September 2007, and defined as such in every Manual issued from 1951 until the substantial revision of military sexual misconduct provisions in 2006. MCM, 1951 and 1969 (Revised ed.), Chapter XXVIII, ¶ 199a, Discussion; MCM (1984, 1995, 1998, 2002, 2005 eds.), Part IV, Paragraph 45c(1)(b) ("[I]f to the accused's knowledge the [victim] is of unsound mind or unconscious to an extent rendering [him or] [23] her incapable of giving consent, the act is rape."). As discussed above, this conduct was punishable as "aggravated sexual assault" from 01 October 2007 through 27 June 2012, and since 28 June 2012 as "sexual assault."

Assuming *arguendo,* that the predecessor Article 120 offenses are no longer listed in Part IV of the Manual and thus do not qualify as listed offenses closely-related the charged offenses for purposes of R.C.M. 1003(c)(1)(B)(i), we conclude that those versions of Article 120 evidence a custom of the service. Specifically, that more than 60 years of practice during which the alleged misconduct was punishable by a dishonorable discharge and at least 30 years of confinement reasonably constitutes "long established practices which by common usage have attained the force of law in the military." MCM (2008 and 2012 eds.), Part IV, ¶ 60c(2)(b); *see also Beaty,* 70 M.J. at 49–50 (Baker, J., dissenting). Notably, the conduct charged here was punishable as "rape" and by "death or such other punishment as a

---

**23.** The words "him or" first appeared in the 1995 Manual and appeared in each subsequent

revision through the 2005 Manual.

court-martial may direct"[24] until the 2006 revision recast this conduct as "aggravated sexual assault" punishable by confinement for 30 years. Art. 120, UCMJ; *see generally* MCM (1951–2005 eds.).

### 3. Maximum Authorized Punishment

■ By applying the various offense-based limits on punishment mandated in R.C.M. 1003(c)(1)(B), we conclude that at the time the offenses were allegedly committed, the authorized punishment included a dishonorable discharge and confinement for at least 30 years. Moreover, effective 15 May 2013, one week prior to the Real Party's arraignment, the President exercised his authority to limit punishments and declared that the maximum punishment authorized for each offense was a "[d]ishonorable discharge ... and confinement for 30 years." Executive Order 13643 of 15 May 2013. This exercise of Presidential authority to limit punishment after the effective date of the statute does not implicate Constitutional prohibitions on *ex post facto* laws as this action did not "disadvantage the [Real Party] affected by them [by authorizing infliction of] a *greater punishment*." *Youngblood,* 497 U.S. at 41–42, 110 S.Ct. 2715 (citation omitted). Therefore, the maximum authorized punishment for each alleged offense includes 30 years confinement and a dishonorable discharge. Since there is no ambiguity in the maximum authorized punishment, application of the Rule of Lenity is unnecessary.

### C. Is issuance of the writ appropriate under the circumstances?

■ In assessing this question, we are aware that the circumstances present here have not been addressed in any decision revealed in the parties' pleadings or by this court. We are also mindful that publication of the statutory text of the amended Article 120 in Part IV of the 2012 Manual, in apparent anticipation of Presidential action, may have complicated judicial application of the Presidentially-prescribed rules for determining offense-based limits on punishments.

Nevertheless, the military judge's analysis and ruling clearly deviated from the President's unambiguous, standing guidance for determining offense-based limits on punishment for offenses not listed in Part IV of the Manual. The military judge's ruling "overreached [his] judicial power to deny the Government the rightful fruits of a valid conviction," *Will,* 389 U.S. at 97–98, 88 S.Ct. 269 (citation omitted), confinement in accordance with a law enacted by Congress exercising its Constitutional authority "to define crimes and fix punishments," and the President's exercise of Congressionally-delegated authority to define limits on punishment, *Ex parte United States,* 242 U.S. at 42, 37 S.Ct. 72. *See also Roche,* 319 U.S. at 31, 63 S.Ct. 938 (issuance of the writ justified by persistent disregard of the Rules of Civil Procedure by Court) (citations omitted).

Additionally, to the extent that confusion over the punishment authorized for offenses charged under the amended Article 120 exists in the trial judiciary, the likelihood of recurrence weighs in favor of issuing the requested writ.[25] At least one military jurist has ruled that the maximum punishment authorized for a sexual assault that allegedly occurred after 27 June 2012 and before 15 May 2013 does not include a punitive discharge or confinement for more than one month, while this court has concluded that a dishonorable discharge and confinement for 30 years are authorized punishments. *Accord United States v. Ramsey,* 40 M.J. 71, 76 (C.M.A.1994) ("the military judge not only lacked authority for his ruling on reconsideration in which he arbitrarily picked some lesser figure than the 10 years authorized for [a lesser-included offense] malingering in a

24. *But see Coker,* 433 U.S. at 592, 97 S.Ct. 2861 (the death penalty is "grossly disproportionate and excessive punishment for the crime of rape [of an adult woman] and is therefore forbidden by the Eighth Amendment as cruel and unusual punishment." (footnote omitted)).

25. On 16 August 2013, the Government filed a Petition for Extraordinary Relief in the Nature of a Writ of Mandamus seeking essentially the same relief in another case charged under the amended Article 120, UCMJ. *United States (Petitioner) v. Lewis T. Booker, Jr., CDR, JAGC, U.S. Navy (Military Judge) (Respondent), Fabian D. Medina, Electronics Technician Petty Officer Third Class, U.S. Navy (Real Party in Interest).*

hostile fire pay zone; but also he failed to follow the clear mandate of R.C.M. 1003(c)(1)(B)(i)." (citation omitted)).

We see no reason to allow such an error to persist in a matter as fundamental to the proper administration of justice as the maximum punishment authorized for an alleged offense. *See Ex parte United States*, 242 U.S. at 51–52, 37 S.Ct. 72 ("since its exercise in the very nature of things amounts to a refusal by the judicial power to perform a duty resting upon it and, as a consequence thereof, to an interference with both the legislative and executive authority as fixed by the Constitution."). Issuance of the requested writ is necessary and appropriate under these circumstances. *Hasan*, 71 M.J. at 418.

## VI. Conclusion

The military judge's ruling that the maximum imposable punishment for each sexual offense alleged is the jurisdictional limitation of a summary court-martial was contrary to the relevant statutes, case law, and valid, Presidentially-prescribed Rules for Courts–Martial. We have concluded that the authorized maximum punishment for each alleged sexual assault offense includes a dishonorable discharge and confinement for 30 years. The military judge's erroneous interpretation and application of the President's unambiguous rules for determining the authorized maximum punishment exceeded the recognized boundaries of judicial authority, was a "clear abuse of discretion," and constitutes a "usurpation of judicial authority." *Bankers Life & Casualty Co.*, 346 U.S. at 383, 74 S.Ct. 145;

*see also Cheney*, 542 U.S. at 380, 124 S.Ct. 2576; R.C.M. 1002, 1003. This error "is likely to recur" in the prosecution of offenses defined in the amended Article 120, UCMJ, which allegedly occurred on or after 28 June 2012 and before 15 May 2013. *Labella*, 15 M.J. at 229 (citations and internal quotation marks omitted).

The Petitioner has established that there is no other adequate means to attain the relief requested, that the right to issuance of the writ is clear and indisputable, and that the drastic remedy of issuance of a writ of mandamus is necessary and appropriate under these extraordinary circumstances. See *Hasan*, 71 M.J. at 418.

The Order of the Military Judge of 28 May 2013, as supplemented by his order of 30 May 2013, is set aside. The maximum punishment authorized for each specification of the Charge alleging violation of Article 120(b), UCMJ, includes a dishonorable discharge, confinement for 30 years, and other punishments authorized by R.C.M. 1003. The Stay of Proceedings ordered by this Court on 24 June 2013 is lifted, and the record is returned to the Judge Advocate General for transmittal to the convening authority for action consistent with this opinion.