# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.R. MCFARLANE, M.C. HOLIFIELD, K.J. BRUBAKER**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**RICHARD L. LESLEY**
**AVIONICS TECHNICIAN FIRST CLASS (E-6),**

**NMCCA 201400271**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 11 March 2014.
**Military Judge:** CDR Michael J. Luken, JAGC, USN.
**Convening Authority:** Commander, Naval Air Force Atlantic, Norfolk, VA.
**Staff Judge Advocate's Recommendation:** CAPT T.J. Welsh, JAGC, USN.
**For Appellant:** Capt David A. Peters, USMC.
**For Appellee:** LCDR Keith B. Lofland, JAGC; USN LT Ann E. Dingle, JAGC, USN.

**26 February 2015**

---
**OPINION OF THE COURT**
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A panel of officer and enlisted members sitting as a general court-martial convicted the appellant, contrary to his pleas, of a single specification of possessing child pornography in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The members sentenced the appellant to 18 months' confinement and a bad-conduct discharge (BCD). The

convening authority (CA) approved the sentence as adjudged, and, except for the BCD, ordered it executed.

The appellant raises two assignments of error:  First that the military judge erred in applying the maximum sentence applicable to 18 U.S.C. § 2252A when that statute's elements were not directly analogous to the offense of which the appellant was convicted.  Second, that the CA's instruction restricting eligibility for court-martial membership frustrated the appellant's right to a properly convened court-martial.

After carefully considering the record of trial and the submissions of the parties, we agree with the appellant's first assignment of error, but find no merit in the second.  We conclude that the military judge erred both in ruling the members' initial announcement of findings to be ambiguous and in applying the incorrect maximum punishment.  After taking corrective action in our decretal paragraph and reassessing the sentence, we conclude the remaining findings and reassessed sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant remains.  Arts 59(a) and 66(c), UCMJ.

## Background

In July of 2008, Commander, Naval Air Force Atlantic (COMNAVAIRLANT), the CA in this case, issued an instruction to subordinate commands establishing the procedure for nomination of prospective court-martial members.[1]  That instruction directed each subordinate command to provide a certain number of nominees in the pay grades of E-7 through O-5.  The instruction did not call for nominees below E-7, regardless of how junior a particular accused may be, and did not call for anyone O-6 or above.  This instruction was in effect when the CA selected and detailed the members of the appellant's court-martial.

The appellant was charged with "knowingly and wrongfully possess[ing] child pornography, to wit:  digital videos **of a minor, or what appears to be a minor,** engaging in sexually explicit conduct, and that said conduct was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces."[2]  After a trial on the merits, during which both parties stipulated that the

---

[1] COMNAVAIRLANT Instruction 5813.1H, dated 29 July 2008.

[2] Charge Sheet (emphasis added).

videos "are actual child pornography within the meaning of Article 134, UCMJ,"[3] the members found the appellant guilty of the Charge and specification, without exception to the language charged.

Upon announcement of the findings, the appellant's defense counsel argued that the maximum sentence applicable was that for a general, or simple, disorder under Article 134 (four month's confinement and forfeiture of two-thirds' pay per month for four months), not for a conviction under 18 U.S.C. § 2252A (10 years' confinement, forfeiture of all pay and allowances, and a dishonorable discharge). The Government disagreed. The military judge then sought to have the members clarify this "ambiguity"[4] by issuing "special findings."[5] The military judge provided the members a new "special findings worksheet"[6] presenting them with four options:

> [W]hat you could have is an acquittal, conviction of the charge as is, or you could have a finding of guilty for knowing and wrongfully possessing child pornography to wit: digital videos of a minor engaging in explicit sexual conduct or you could find, knowing and wrongfully possessing child pornography to wit: what appears to be a minor engaging [in explicit sexual conduct].[7]

The military judge then allowed both counsel to present additional argument on the specific issue of whether the images in question involved actual minors or merely the appearance thereof. In his argument, the appellant's defense counsel conceded that the images were of "real children."[8] After

---

[3] Prosecution Exhibit 7.

[4] Record at 738.

[5] *Id*. at 739.

[6] Appellate Exhibit LXXIV.

[7] Record at 739. We find it puzzling why a procedure purportedly aimed at clarifying an ambiguity would keep as an option the very finding that was deemed to be ambiguous, that is, conviction of the charge as-is. We also note that providing the members with the option of acquittal goes beyond merely asking them to clarify their announced findings and invites them to reopen deliberations – something they clearly could not do. Fortunately, for reasons provided below, we need not reach and address these concerns here.]

[8] *Id*. at 743.

3

approximately 15 minutes in the deliberation room, the members returned and announced new findings:

> Excepting out the words: "or what appears to be a minor," Of the excepted words: Not Guilty; Of the specification as excepted: Guilty; Of the Charge: Guilty.[9]

Based on these revised findings, the military judge found that the offense of which the appellant was convicted was "analogous or basically equal" to 18 U.S.C. § 2252A, and instructed the members that the maximum punishment was confinement for 10 years, a dishonorable discharge, reduction to pay grade E-1, and total forfeitures.[10]  The defense maintained its position that the original findings were valid, and that the maximum sentence was only that applicable to a simple disorder under Article 134, UCMJ.

Other facts necessary to address the assigned errors will be provided below.

**Maximum Sentence**

*1.  Determining the applicable maximum sentence for offenses charged under clause 1 and 2 of Article 134, UCMJ*

The maximum punishment authorized for an offense is a question of law, which we review *de novo*.  *United States v. Beaty*, 70 M.J. 39, 41 (C.A.A.F. 2011).  For limits on authorized punishments under the UCMJ, we turn to RULE FOR COURTS-MARTIAL 1003, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).[11]  This Rule "employs mutually exclusive criteria, dependent upon whether the offenses are 'listed' or 'not listed' 'in Part IV [of the Manual for Courts-Martial].'"  *United States v. Booker*, 72 M.J. 787, 799 (N.M.Ct.Crim.App. 2013), *appeal denied sub nom. United States v. Schaleger,* 73 M.J. 92, (C.A.A.F. 2013) (summary disposition) (citation omitted).  The maximum limits for authorized punishments are set forth for each offense listed in Part IV of the Manual.  For offenses not listed in Part IV of the Manual, we turn to the President's guidance in R.C.M. 1003(c)(1)(B)(i)-(ii).  There we find the inquiry is "dependent

---

[9] *Id*. at 753.

[10] *Id*. at 766.

[11] Pursuant to authority delegated from Congress under Article 56, UCMJ, the President has specified offense-based limits on punishment in R.C.M. 1003.

upon whether the charged offense: (1) is closely related to or necessarily included in an offense listed in Part IV of the Manual, and, if neither, then (2) whether the charged offense is punishable as authorized by the United States Code or as authorized by custom of the service." *Booker*, 72 M.J. at 802 (footnote omitted).

The President issued Executive Order (EO) 13593 on December 13, 2011,[12] amending Part IV of the Manual for Courts-Martial to include Child Pornography as an enumerated Article 134 offense.[13] This Presidential action effectually "listed" Child Pornography as an offense in Part IV of the Manual. *See Booker,* 72 M.J. at 800-02. Under this offense, possessing child pornography carries a maximum punishment of 10 years' confinement. The elements and legal definitions in the new Article 134 offense for wrongfully possessing child pornography are virtually identical to those the military judge used to instruct the members.[14] Thus, the charged offense is now either "listed" in Part IV of the Manual or "closely related" to the offense of wrongfully possessing child pornography as proscribed by MCM (2012 ed.), Part IV, ¶ 68b. Additionally, there is no doubt that the Article 134 offense of possessing child pornography existed in Part IV of the Manual at all relevant stages of the appellant's trial.[15] However, the appellant's charged offense occurred on or about June 2011, well before the effective date of EO 13593.

R.C.M. 1003(c) is silent on the question of whether, for its punishment limitations to apply, a "listed" offense must be in Part IV of the Manual at both the time of the alleged offense and at the time of trial, or simply at the time of trial. Ultimately, we need not answer this question here, as to read R.C.M. 1003(c) to permit in this case the application of the maximum punishment now applicable to MCM (2012 ed.), Part IV, ¶ 68b, would constitute an impermissible *ex post facto* increase in the allowable punishment.[16] The Court of Appeals for the Armed

---

[12] Amendments contained in EO 13593 took effect 30 days following its issuance.

[13] *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 68b.

[14] Record at 693-96.

[15] Charges were preferred on 9 July 2013, referred on 27 September 2013, and the appellant was arraigned on 7 October 2013.

[16] EO 13593 states, in part: "Nothing in these amendments shall be construed to make punishable any act done or omitted prior to the effective date of

Forces held, prior to EO 13593's effective date, that possession of "what appears to be" child pornography was punishable under Article 134 only as a simple disorder. *Beaty*, 70 M.J. at 40, 45. Thus, at the time the appellant committed the charged misconduct - post-*Beaty*, but pre-EO 13593 – the maximum punishment applicable was four months' confinement and forfeiture of two-thirds' pay per month for four months. Increasing the possible confinement thirty-fold and adding a punitive discharge after the appellant committed the offense would violate the appellant's constitutional protections.

*2. Choosing between Findings and "Special Findings"*

The critical question, then, is whether the appellant was convicted of the specification as written on the charge sheet (as was announced by the members in their initial findings) or of the specification as excepted by the members (as was announced in their second, "special" findings). We conclude it was the former.

"A finding on the guilt or innocence of the accused is not final until it is formally and correctly announced in open court." *United States v. Trew*, 68 M.J. 364, 367 (C.A.A.F. 2010) (citation omitted). Findings, once "announced in open session," are not subject to reconsideration. R.C.M. 924(a). Where an error is made in the announcement of findings, however, the military judge may instruct the members to correct the error via a new announcement. R.C.M. 922(d). In cases where announced findings are ambiguous, the military judge should instruct the members to clarify their findings. R.C.M. 922(b), Discussion. An ambiguous finding that prevents a Court of Criminal Appeals from performing the review required under Article 66(c), UCMJ, affects an appellant's "substantial right to a full and fair review of his conviction." *United States v. Walters*, 58 M.J. 391, 397 (C.A.A.F. 2003). This court "may not conduct a factual sufficiency review when the findings are ambiguous because such action creates the possibility that the court would affirm a finding of guilt based on an incident of which the appellant had been acquitted by the factfinder at trial." *United States v. Wilson*, 67 M.J. 423, 428 (C.A.A.F. 2009) (citing *Walters,* 58 M.J. at 395).

---

this order that was not punishable when done or omitted." There is no similar language regarding maximum punishments. However, "[t]he Constitution forbids the application of any new punitive measure to a crime already consummated, to the detriment or material disadvantage of the wrongdoer." *Lindsey v. Washington*, 301 U.S. 397, 401 (1937) (citations omitted).

Such was not the case here. There is nothing in the original findings that prevents this court from determining whether the findings or sentence were "correct in law and in fact" and should be approved. Art. 66(c), UCMJ. Nor is there anything in the findings that indicates the appellant was acquitted of any part of the offense charged. Had the military judge not found the initially announced findings to be ambiguous, this court would have had no problem performing the required review of those findings, and would have arrived at the same conclusion it does today.

The Government chose to charge the appellant with possessing child pornography using a broad definition that allowed the members to convict if they found, *inter alia*, the digital videos to be "of a minor, or what appears to be a minor, engaging in sexually explicit conduct."[17] The military judge instructed the members that "child pornography" includes both depictions of an actual minor child engaging in "sexually explicit conduct" and "obscene visual depiction[s] of a minor engaged in sexually explicit conduct."[18] He further instructed them that "[s]uch a depiction need not involve an actual minor, but instead only what appears to be a minor."[19] This is exactly what the members found the appellant possessed: digital videos of a minor, or what appears to be a minor, engaging in sexually explicit conduct.

It is not for us to second guess the Government's choice of charging language, so long as the language states an offense and is sufficiently supported by the evidence presented. In this case the Government elected to prosecute the appellant using a broad definition of "child pornography." This broad definition lowered the Government's burden in that it did not necessarily need to prove that the images in the videos were of real children. In doing so, it bound itself (consciously or not) to a lower maximum punishment: that applicable to a simple disorder.

---

[17] Charge Sheet.

[18] Record at 694.

[19] *Id*. The military judge did not instruct the members regarding findings by exceptions. We presume that, if the Government's goal was to have the members except the language "or what appears to be a minor," it would have requested this instruction. Likewise, the original findings worksheet provided no option for findings by exception. AE XXVI. The Government indicated it had no objections to the original findings instructions or worksheet. Record at 654.

The Government invites us to see the revised findings as evidence that the initial findings were ambiguous.  We decline to do so.  What occurred after the initial announcement of findings is irrelevant.  Once findings were announced, absent any error or real ambiguity, they were final.  That the members subsequently excepted out "or what appears to be a minor" from the specification's language, thus clarifying that they believed the images were of actual children, does not affect the validity or finality of their initial findings.  Nor does it matter that the defense stipulated that the images were of actual minors.  Assuming the members found the stipulated matters to be true, the fact the images contained actual minors does not contradict their finding that the images were child pornography that contained *either* actual minors *or* a depiction thereof.

Accordingly, we find the initial findings announced by the members in open session were not ambiguous, and that the military judge erred both in directing the members to provide revised findings and in applying the maximum punishment applicable to 18 U.S.C. § 2252A.  Under *Beaty*, it should have been clear to the military judge what the applicable maximum punishment was given the member's initial findings.[20]  Because the appellant's sentence of 18 months' confinement and a BCD exceeded the maximum lawful sentence, it materially prejudiced the appellant's substantial rights.  *See Beaty*, 70 M.J. at 45.

## Members Selection

The standard of review for the proper selection of a court-martial panel is *de novo.  United States v. Kirkland* 53 M.J. 22, 24 (C.A.A.F. 2000).  We look at three primary factors to determine whether an impermissible member selection has taken place:

---

[20] The Government argues that this court's decision in *United States v. Barbier*, 2012 CCA LEXIS 128 (N.M.Ct.Crim.App. 12 Apr 2012), dictates a different result.  We disagree.  *Barbier* involved a guilty plea; the providence inquiry in that case left no doubt that the accused understood his plea and the maximum sentence applicable.  There was a clear meeting of the minds that Barbier was, in effect, pleading guilty by excepting out the "or what appears to be" language.  At trial, all parties in *Barbier* agreed on the maximum punishment; the appellant in that case did not voice a contrary argument until the case was reviewed on appeal.  In the case at bar, the appellant raised the issue immediately following announcement of findings, thus indicating there was no such agreement on the applicable maximum punishment.

8

> 1. Improper motive in packing a member pool;
> 2. Systematic exclusion of potential members based on rank or other impermissible variable; and,
> 3. Good faith attempts to be inclusive and open the court-martial process to the entirety of the military community.

*United States v. Dowty*, 60 M.J. 163, 171 (C.A.A.F. 2004). If either of the first two criteria is present, the process is impermissible. *Id.* These criteria are not only considered in the actual panel selection process, but also in the process of presenting nominations to the CA. *United States v. Roland*, 50 M.J. 66, 69 (C.A.A.F. 1999).

In a case of systematic exclusion of members by rank, it is the responsibility of the defense to establish the improper exclusion. *Kirkland*, 53 M.J.at 24. Once improper exclusion has been established, the burden is placed on the Government "to demonstrate that the error did not 'materially prejudice the substantial rights of the accused.'" *Dowty*, 60 M.J. at 173 (quoting Art. 59(a), UCMJ).

Although the record is clear that service members were impermissibly excluded from the selection process by virtue of their rank,[21] the question remains whether that improper nomination process materially prejudiced the appellant. In reviewing this case we find: (1) no evidence that the errant instruction was issued with an improper motive; (2) no evidence that the CA had an improper motive when detailing the members assigned to the appellant's court-martial; (3) the CA was a person authorized to convene a general court-martial; (4) the CA was properly advised of his Article 25 responsibilities, and that he could pick any member of his command, not just those who had been nominated; (5) the court members were personally chosen by the CA from a pool of eligible candidates; and, (6) the court members all met the criteria in Article 25, UCMJ. Additionally, given the appellant's status as an E-6 past high-year tenure, it is unlikely any members below the pay grade of E-7 would have been senior to the appellant, and thus eligible to serve as a member of his court-martial. Under these circumstances, we are convinced that the appellant's case was heard by a fair and impartial panel, and that the error in this case was harmless. *See United States v. Bartlett*, 66 M.J. 426, 431 (C.A.A.F. 2008).

---

[21] While the CA indicates he understood it was within his discretion "to detail anyone throughout the COMNAVAIRLANT claimancy, including members of [his] staff" and that he "could detail officers in the pay grade of O-6," AE XCII at 2, this does not cure the defect in the nomination process.

## Failure to Comment on Legal Error

Although not raised as error, we note that the staff judge advocate (SJA) failed to comment on the allegations of legal error contained in the appellant's request for clemency submitted pursuant to R.C.M. 1105. The SJA "is not required to examine the record for legal errors," but must "state whether, in the [SJA's] opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105." R.C.M. 1106(c)(4). "This applies even if the errors are submitted after service of the [SJA] recommendation, as long as that is done within the time prescribed by RCM 1105(c)(1)." *United States v. Green*, 44 M.J. 93, 95 (C.A.A.F. 1996) (citing *United States v. Hill*, 27 M.J. 293, 295-96 (C.M.A. 1988)). The appellant's trial defense counsel submitted the clemency request alleging legal error four days after receiving the SJA's recommendation, yet the SJA did not prepare an addendum to his recommendation addressing the alleged error. This failure, however, does not require an automatic return of the case to the CA. "[A]n appellate court may determine if the accused has been prejudiced by testing whether the alleged error has any merit and would have led to a favorable recommendation by the SJA or corrective action by the [CA]." *Green*, 44 M.J. at 95 (citations omitted).

In his clemency request, the trial defense counsel alleged two errors: First, that an investigator's testimony that she thought the appellant was lying and evasive during his interrogation constituted improper "human lie detector" testimony; and, second, that there was insufficient evidence in the record to prove the appellant possessed the child pornography during the period alleged in the specification.

We find both allegations to be without merit. While the investigator's comments on the appellant's veracity may have been improper, we are satisfied that the military judge's curative instruction was sufficient to address the issue. Also, the testimony of numerous witnesses that the laptop computer and hard drive in question belonged to the appellant was confirmed by the appellant himself during his videotaped interrogation. Although there was no evidence presented to place either item in the appellant's hands during the period alleged, there was more than sufficient evidence to prove that he constructively possessed the computer and hard drive, as well as the child pornography found thereon.

10

Accordingly, we find that the alleged errors would not have led to a favorable SJA recommendation or corrective action by the CA. There being no prejudice, no remedy is required.

**Sentence Reassessment**

As we hold that the maximum punishment applicable in this case was four months' confinement and forfeiture of two-thirds' pay per month for four months, we will reassess the sentence in accordance with the principles set forth in *United States v. Moffeit*, 63 M.J. 40, 41 (C.A.A.F. 2006), *United States v. Cook*, 48 M.J. 434, 438, (C.A.A.F. 1998), and *United States v. Sales*, 22 M.J. 305, 307-09 (C.M.A. 1986). Applying the incorrect maximum punishment of ten years' confinement, total forfeiture of pay and allowances, and a dishonorable discharge, the members sentenced the appellant to confinement for 18 months and a BCD. While our holding certainly presents a "dramatic change in the penalty landscape," *United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006) (quoting *United States v. Riley*, 58 M.J. 305, 312 (C.A.A.F. 2003)), this change does not preclude our ability to reassess the sentence in this case.

The correct applicable maximum sentence is far below what the members imposed. However, the evidence considered by the members has not changed; the graphic and disturbing images involved have not changed; the impact on good order and discipline has not changed; and the evidence ultimately provided to the members during the sentencing proceedings almost certainly would not have changed. In his argument on sentencing, the trial defense counsel asked the members to "consider something slightly more serious than NJP. . . . something in the 60 to 75-day range and a reduction of one or two rates."[22] The members far exceeded this in their sentence, obviously viewing the appellant's misconduct as something meriting punishment *much* "more serious than NJP." Maximum sentences serve as an upper limit on the permissible range of punishments for a given offense, and we believe the members would have found the appellant's conduct to fall within the most egregious of simple disorders. Finally, and unfortunately, this court is all too familiar with cases involving the possession of child pornography and the sentences that accompany them. Accordingly, we conclude that the members would have imposed the maximum sentence permitted for a general disorder involving the

---

[22] Record at 806. Nonjudicial punishment (NJP) is authorized to address "minor offenses" and does not (except in a very limited circumstance) include confinement. Art. 15, UCMJ.

possession of this child pornography under these circumstances. We further conclude such a sentence is appropriate in this case.

## Conclusion

The revised findings announced by the court-martial are a nullity. The original findings announced by the court-martial and only so much of the sentence as includes four months' confinement and forfeiture of two-thirds' pay per month for four months are approved.

For the Court

R.H. TROIDL
Clerk of Court
